# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **Z.B.**

**No. 19-0522** (Kanawha County 17-JA-37)

**FILED**
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.B., by counsel Peter A. Hendricks, appeals the Circuit Court of Kanawha County's May 3, 2019, order terminating her parental rights to Z.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Matthew Smith, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights, placing the child with a foster family, and violating her due process right to be heard at the final dispositional hearing.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2017, the DHHR filed an abuse and neglect petition against petitioner alleging that her illegal drug use and criminal convictions affected her ability to provide a safe and stable environment for her child, Z.B. In November of 2017, the circuit court held petitioner's preliminary hearing, heard the testimony of petitioner's probation officer regarding petitioner's substance abuse, and found that imminent danger to the child existed. Although the child was ordered to remain in the DHHR's legal custody, the circuit court permitted the DHHR

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

to give physical custody of the child to his maternal grandparents, with whom he had lived since birth.

The circuit court held an adjudicatory hearing in March of 2018. Upon petitioner's stipulation to failing to protect or properly parent the child due to her illegal drug use, the circuit court adjudicated petitioner as an abusing parent. Petitioner requested a post-adjudicatory improvement period, and the circuit court granted the motion. The circuit court ordered that petitioner participate in adult life skills classes, parenting classes, and supervised visitations, as well as complete a substance abuse treatment program. In July and September of 2018, the circuit court held review hearings and found that petitioner had substantially complied with her improvement period. With the circuit court's permission, petitioner changed rehabilitation programs and received overnight visits with the child. In December of 2018, the circuit court held another review hearing and again found that petitioner had substantially complied with her improvement period. The circuit court learned from the DHHR that petitioner left the previous program and was attending yet another rehabilitation program. The circuit court also learned that the child was placed in a different kinship home due to the maternal grandmother's medical issues requiring out-of-state medical treatment. Thereafter, the child was moved from the kinship placement to a foster family due to his behavioral issues and the maternal grandmother's serious health concerns.

In February of 2019, the circuit court held a review hearing and learned that petitioner had been removed from her rehabilitation program for violating several policies, such as curfew and dating restrictions. The circuit court found that petitioner had not substantially complied with her improvement period and ordered the immediate cessation of visits with the child. The DHHR explained that the child should remain with the specialized foster family due to his young age and behavioral problems. Two months after the cessation of visits, the DHHR reported that the child's behavioral problems and developmental regressions had improved.

The circuit court held a final dispositional hearing in April of 2019. The DHHR worker testified that petitioner had attended three different inpatient substance abuse programs and one outpatient program, but had not completed any of them. She further testified that the DHHR had exhausted all efforts to remedy the conditions of neglect and reunify petitioner with the child. Regarding placement of the child, the DHHR worker testified that the maternal grandmother's various medical and financial issues were serious concerns. Petitioner testified that she remained drug-free, maintained housing and employment, and was attending on-line college courses. Based upon the evidence presented, the circuit court concluded that petitioner had over two years to correct the conditions of neglect, but that she had failed to do so. Ultimately, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interest of the child to terminate petitioner's parental rights. Accordingly, petitioner's parental rights were terminated by order entered on May 3, 2019. It is from this dispositional order that petitioner appeals.[2]

---

[2]The parental rights of the unknown father were also terminated below. According to the DHHR, the permanency plan for Z.B. is adoption by his foster family.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first alleges that the circuit court erred in terminating her parental rights upon findings that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future when she substantially complied with her improvement period and was on "the right path" to correcting the conditions of neglect. According to petitioner, she corrected the substance abuse issues affecting her ability to provide a safe and stable home environment for the child, as evidenced by her negative drug screens throughout her improvement period. She also contends that at the time she was removed from her last rehabilitation program, she was employed, living in an apartment, passing all drug screens, attending therapy sessions, attending an intensive outpatient addiction program, taking on-line college courses, and otherwise successfully managing her life. We disagree and find that petitioner it entitled to no relief.

West Virginia Code § 49-4-604(b)(6) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. Further, pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child."

Here, it is clear that the record supports the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect because she failed to follow through with rehabilitative efforts designed to reduce or prevent abuse or neglect of the child. Petitioner was ordered to complete an inpatient rehabilitation program, but either left prior to completion or was removed from each program she attended. Further, petitioner violated the DHHR's rules for visitation by allowing a stranger to stay in the house with the child during an unsupervised weekend visit. Petitioner failed to grasp why this

behavior was unsafe for herself and the child. Based on the foregoing, it is clear petitioner failed to complete the terms of her improvement period, despite several extensions.

To the extent petitioner argues that she substantially complied with certain aspects of her improvement period, we have held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Additionally, "'[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014). We note that, although petitioner complied with many components of her family case plan, she failed to complete an inpatient rehabilitation program. The DHHR also presented evidence that petitioner could not provide a safe and stable environment for the child as she exposed the child to a stranger during an unsupervised overnight visit. Moreover, the record shows that the child's welfare required termination of petitioner's parental rights because petitioner lacked a bond with the child who had been raised by the maternal grandmother since birth. Moreover, the child's severe behavioral problems lessened after visits with petitioner stopped. For these reasons, we find no error in the circuit court's decision to terminate petitioner's parental rights as it is clear that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and termination of petitioner's parental rights was necessary for the welfare of the child.

Petitioner next argues that, "assuming" the circuit court "correctly" terminated her parental rights, it erred by placing the child with a foster family instead of his maternal grandparents in violation of West Virginia Code § 49-4-604(b)(5)(E)(ii).[3] Petitioner asserts that

---

[3]Petitioner argues that the circuit court erred in denying the maternal grandmother's motion to intervene and cites West Virginia Code § 49-4-604(b)(5)(E)(ii), which provides, in pertinent part, that, at disposition, a circuit court may temporarily commit a child to "the care, custody, and control of . . . a suitable person who may be appointed guardian by the Court" as an alternative to termination of a parent's parental rights. That statute goes on to require that "[t]he court order shall also determine under what circumstances the child's commitment to the [DHHR] are to continue. Considerations pertinent to the determination include whether the child should . . . [b]e considered for permanent placement with a fit and willing relative." However, petitioner's argument is unclear as she cites law requesting a less-restrictive disposition to the termination of her parental rights, when the assignment of error assumes that termination of petitioner's parental rights was proper. To the extent that petitioner argues she should have been granted a less-restrictive alternative to termination of her parental rights such as permanent guardianship of the child with the maternal grandparents, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less

(continued . . .)

4

the maternal grandparents developed a strong emotional bond with the child and were able and willing to care for the child, but the circuit court erroneously placed the child with a foster family based upon the alleged "self-serving" reports of the child's "hellish" behavior.[4] We disagree, and find petitioner's arguments without merit.

Although the record indicates that the child lived with the maternal grandparents for a portion of his young life, the record nonetheless shows that it was in his best interest to remain with his foster family. While petitioner argues that the foster family's reports of the child's "hellish" behavior after visits with petitioner were self-serving and unchecked, both the Children's Home Society report in February of 2019 and the Birth to Three report confirmed the child's violent outbursts, nightmares, and developmental regressions while he lived in the second kinship placement and with the foster family. The record also shows that the DHHR attempted to place the child in a second kinship placement when the maternal grandmother had cancer treatment, but said placement was unsuccessful with the child's growing behavioral problems. At disposition, the circuit court denied the maternal grandparents' motions to intervene and to seek placement of the child, citing the maternal grandmother's serious health concerns as well as the child's heightened need for specialized care. While petitioner argues that the maternal grandmother is able to care for the child, the circuit court, having observed the maternal grandmother in the courtroom, learned of her various health issues, and heard her arguments, concluded otherwise. We note that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*,

---

restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the circuit court properly found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future, a less-restrictive alternative disposition was not warranted.

[4]On appeal, petitioner asserts that the maternal grandparents were psychological parents to the child. The record indicates one instance of this assertion, which occurred at the final dispositional hearing when petitioner answered that she considered the maternal grandmother as a psychological parent to the child. Other than this statement, no further argument was made below, and the circuit court did not hear evidence as to whether the maternal grandmother was a psychological parent. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). As such, any argument on appeal predicated on petitioner's assertion that the maternal grandmother was a psychological parent to the child will not be considered.

201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). We find that the circuit court properly weighed the maternal grandmother's health concerns against the child's best interests to remain in his specialized foster care home where he had made improvements in his behavioral problems and developmental milestones. For these reasons, we find no error in the circuit court's decision to keep the child in the care of his foster family.

Finally, petitioner argues that the circuit court erred in denying her "due process and statutory rights to the opportunity to present all of her evidence" at the final dispositional hearing. Petitioner asserts that the circuit court cut her questions short on cross-examination and refused to hear testimony from her witness, her probation officer. West Virginia Code § 49-4-601(h), provides, in relevant part, that

> [i]n any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. Foster parents, pre-adoptive parents, and relative caregivers shall also have a meaningful opportunity to be heard.

Petitioner's argument is not supported by the record. Contrary to her argument, the record shows that petitioner cross-examined the DHHR's witness, testified on her own behalf, and presented argument. The circuit court, having presided over all previous hearings, reminded petitioner's newly hired counsel that he need not elicit redundant testimony. The circuit court stated, "I understand that you are new to the case, but I've heard [it], I've got it and I understand it." The circuit court found that the potential testimony of petitioner's witness would not aid its determination. According to the record, the circuit court stated that it made its ruling upon "all prior evidence that was adduced in connection with this matter." Although petitioner argues that she was not allowed to present all of her evidence, the circuit court clearly explained on the record why it sustained the DHHR's objections on cross-examination, refused to hear petitioner's witness's potential testimony, and denied further redundant evidence. Based upon the record, it is clear that the circuit court did not deny petitioner a meaningful opportunity to be heard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 3, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison